PEOPLE v JOHNSON

Docket No. 81352. Argued April 6, 1988 (Calendar No. 9). Decided November 18, 1988.

John R. Johnson was convicted by a jury in the Washtenaw Circuit Court, Ross W. Campbell, J., of assault and battery. The Court of Appeals, Hood, P.J., and MacKenzie and R. M. Pajtas, JJ., reversed in an opinion per curiam, holding that the warrant to search for and seize the defendant was invalid, and that photographs taken of the defendant while in custody and used in a photographic line-up should not have been admitted into evidence (Docket No. 89246). The people appeal.

In an opinion by Justice Brickley, joined by Chief Justice Riley and Justices Cavanagh, Archer, and Griffin, the Supreme Court *held:*

The search warrant issued by the magistrate in this case was not provided for by MCL 780.652; MSA 28.1259(2). However, its issuance did interpose a determination of probable cause to search, which along with the presence of probable cause to arrest thereby removed any Fourth Amendment barrier to the arrest of the defendant in his residence.

The question whether the identification procedure used by the police was consistent with Michigan law was not clearly considered below or briefed in the Supreme Court, requiring remand to the Court of Appeals for reconsideration of the issue whether the use of a photographic line-up was proper where the defendant without the advice of counsel was photographed while under arrest, but released prior to the line-up. If the Court of Appeals determines that the procedure was not consistent with Michigan law, it should further determine whether there was an independent basis for the complainant's in-court identification of the defendant and whether the improper admission of the results of the photographic line-up was harmless.

Justice Levin concurred in the result.

Justice Boyle, concurring, stated that the proper focus of the inquiry regarding the admissibility of the evidence at issue is whether it was seized in compliance with the Fourth Amendment. While neither the search warrant statute nor the warrant in this case authorized the seizure of the defendant as

evidence, the warrant protected the defendant's privacy interest in being free from an unreasonable search, and there was probable cause to justify his arrest without a warrant.

Reversed and remanded.

161 Mich App 205; 409 NW2d 784 (1987) remanded.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*McCoy & McDaniel* (by *Timothy E. McDaniel*) for the defendant.

BRICKLEY, J. In this case, the police obtained a search warrant to search a mobile home for the presence of the prime suspect in a case being investigated.

I

The record indicates that there was probable cause to believe that the defendant had committed the crime in question which occurred a few days earlier at a local store. The complainant, a nine-year-old girl, claimed that defendant touched her on the buttocks while in a Meijer store. Immediately after she was touched, she turned to see who had touched her and the only person she saw was the person she later identified as defendant Johnson. She testified that when she looked at him, he was laughing.

The complainant then went to her mother, who was in a neighboring section of the store. She told her mother what had happened, and her mother looked for the perpetrator in the area, did not see him, and so had a clerk call security. The complainant, her mother and brother, and a clerk began looking for the man in an area of the store in which the complainant's brother had seen him.

The complainant spotted him as he was approaching an exit of the store, and they followed him out of the store. At about that time, security guards arrived. Defendant then engaged in behavior thought to indicate that he was trying to avoid detection in that he had his son get in their car, but then returned to the store for some time. When he came back out, he returned to his car and left. The security guards followed him for some time and copied down the license plate number of the car he was driving.

The case was then referred to the police, who traced the license number and determined that the car belonged to a certain woman who lived in a mobile home park. The complainant had given a description of her assailant to the security guard. The police summarized her description as follows:

> [M]ale, six (6) feet tall, two hundred and thirty-five (235) pounds, race believed to be Iranian or Asian, curly collar-length black hair, approximately forty (40) years old, wearing a green Army type jacket with sleeves rolled up, brown tee shirt, tennis shoes, brown pants, dark blue fishing type hat.

The police contacted the manager of the park, who told them that a man fitting the description lived in a mobile home in the park with the woman to whom the car was registered.

On the basis of this information, a police detective telephoned the defendant at the mobile home and asked him to allow himself to be photographed. He refused. The detective therefore sought and obtained a search warrant which stated:

> The person, place or thing to be searched is described as and located at:

Lot 186 and the mobile home thereon of the
Lakeview Trailer Park, located at 9942 Geraldine,
Ypsilanti Township, Washtenaw County

The property to be searched for and seized, if
found, is specifically described as:

The person of John Robert Johnson, aka Edward
Woods.

The affidavit supporting the warrant contained
nine subsections. Seven of those subsections pro-
vided the information described above, i.e., the
grounds or the probable cause for the search. At
the end of the affidavit, two subsections were
included which read as follows:

G). I wish to conduct a lineup, either live or
photographic, at the pleasure of Mr. Woods, to
determine the identity of the suspect.

H). If the lineup is live, I wish the court to
require Mr. Woods' attendance at the Washtenaw
County Sheriff's Department for no more than
four hours on a convenient date before June 15,
1984.

The record is unfortunately not completely clear
as to what occurred when the detective arrived at
the mobile home with the warrant. Apparently,
defendant answered the knock, but stayed inside
the home. There is no testimony as to how many
officers were present or the manner in which they
confronted defendant.

The detective told defendant that he could ei-
ther appear in a physical line-up or allow his
photograph to be taken. Defendant apparently stated
that he did not wish to do either, and the detective
then "indicated to him [that] he had to do one or the
other . . . ." At the preliminary examination, the
detective testified that "when we made contact with
him that morning, he refused to participate in a

physical line-up. At which time I explained to him I would be taking photographs." Defendant was then ordered to leave his trailer and was required, against his will, to be photographed.

The complainant identified the defendant's photograph and later identified him at trial. Defendant was convicted of assault and battery[1] and appealed as of right. The Court of Appeals reversed the conviction, holding that the photographs taken while defendant was in custody and the resulting photographic line-up identification should have been suppressed because MCL 780.652(d); MSA 28.1259(2)(d) did not provide for search warrants for the purpose of photographing a suspect. We granted leave, inter alia, to review whether or not suppression was required.

II

The language of the warrant makes clear that the "object or thing" being searched for was the defendant. The warrant itself makes no mention of the taking of photographs. Since the object of the search warrant was the person of the defendant, it provides little guidance to inquire, as did the Court of Appeals, whether there was a "nexus" between the photographs taken and the crime in question.[2]

This mischaracterization of the object of the search warrant is also apparent in this Court's order granting leave to appeal which mirrored the Court of Appeals analysis. The order granting leave to appeal stated the primary issue as follows:

[W]hether, under MCL 780.652(d); MSA 28.1259(2)(d), a search warrant may be issued to

---

[1] MCL 750.81; MSA 28.276.

[2] See *Warden v Hayden*, 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967).

compel a person to participate in a line-up or to be photographed . . . .

The confusion inherent in the question as phrased above is evident in the Court of Appeals opinion. That Court attempted to distinguish between searches for "incriminating" as opposed to "identifying" evidence and stated that there is no nexus between a photograph that is obtained for use in a photographic line-up and criminal behavior.[3]

By viewing the photograph as the object of the search, the Court of Appeals failed to address the fact that the defendant was taken into custody, as well as the relationship of that custody to the subsequent use of the photograph in an identification line-up which occurred after defendant was released from custody.

The examination of whether the police procedure in this case was lawful must therefore encompass two questions which are subsumed with the issue defined in our order granting leave. First, was the arrest of defendant lawful? Second, once he was arrested and a photograph was taken, was

---

[3] The evidence obtained in [*People v Lovett*, 85 Mich App 534; 272 NW2d 126 (1978)] was incriminating and tended to identify the defendant, but it did not identify him in the "pure" sense of a pretrial line-up. In the instant case, the evidence seized with the search warrant was used solely to identify defendant, not to incriminate him. The case law cited by the prosecution does not support its contention that the photograph was evidence of a criminal activity. In abolishing the "mere evidence" rule, the United States Supreme Court stated that, in order for an item to be subject to seizure, there must be a nexus between the item and the criminal behavior. *Warden v Hayden*, 387 US 294, 306-307; 87 S Ct 1642; 18 L Ed 2d 782 (1967). There is no nexus between a photograph that is obtained for use in a photographic line-up and criminal behavior. Therefore, the search warrant was issued for an improper purpose and is invalid. [*People v Johnson*, 161 Mich App 205, 209; 409 NW2d 784 (1987).]

the identification procedure employed consistent with the evidentiary principles of our jurisprudence?

### III

The statute governing the scope of search warrants which may be issued by the courts of this state, MCL 780.652; MSA 28.1259(2), reads as follows:

> A warrant may be issued to search for and seize any property or other thing which is either:
>
> (a) Stolen or embezzled in violation of any law of this state.
>
> (b) Designed and intended for use or which is or has been used as the means of committing a criminal offense.
>
> (c) Possessed, controlled or used wholly or partially in violation of any law of this state.
>
> (d) Evidence of crime or criminal conduct on the part of any person.
>
> (e) Contraband.
>
> (f) The bodies or persons of human beings or of animals, who may be the victims of a criminal offense.
>
> (g) The object of a search warrant under any other law of this state providing for the same. If a conflict exists between this act and any other search warrant law, this act shall be deemed controlling.

This statute does not provide for the seizure of criminal suspects. It explicitly limits its scope to "property or other thing[s]." Similarly, the search warrant itself defined the defendant as "the property to be searched for and seized." In addition, the probable cause determination made by a magistrate considering a search warrant application is not identical to that made by a magistrate when

deciding whether or not to issue an arrest warrant. The difference has been described as follows:

> It is generally assumed that the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to search. But even if this is so, it does not follow that probable cause for arrest and probable cause for search are identical in all respects. Each requires a showing of probabilities as to somewhat different facts and circumstances, and thus one can exist without the other. In search cases, "two conclusions necessary to the issuance of the warrant must be supported by substantial evidence: that the items sought are in fact seizable by virtue of being connected with criminal activity, and that the items will be found in the place to be searched." It is *not* also necessary that a particular person be implicated in the crime under investigation. By comparison, in arrest cases there must be probable cause that a crime has been committed and that the person to be arrested committed it, which of course can exist without any showing that evidence of the crime will be found at premises under that person's control. [1 LaFave & Israel, Criminal Procedure, § 3.3, pp 184-185.]

Since it cannot be assured that magistrates would make a finding as to the existence of probable cause to arrest when deciding whether or not to issue a search warrant, it would be unwise to treat the presence of a search warrant for a suspect as a judicial finding of probable cause to arrest.

In spite of our recognition that MCL 780.652(d); MSA 28.1259(2)(d) does not provide for search warrants, the objects of which are persons other than victims of crime, we nevertheless find that the arrest of the defendant was lawful on the basis of the information possessed by the police prior to seeking or executing the warrant. A warrant is generally not required to accomplish a felony ar-

rest in and of itself. Indeed, MCL 764.15; MSA 28.874 makes clear that in most cases an arrest warrant is not required so long as there is probable cause to believe that defendant committed a felony.[4] Nevertheless, the arrest occurred in the defendant's residence, and therefore both the federal and the state constitutions require that special protections be afforded. *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980); *People v Oliver,* 417 Mich 366, 378-379; 338 NW2d 167 (1983).

In *Payton,* the United States Supreme Court held that absent a warrant, the fruits of an arrest of a suspect in his residence must be suppressed. The purpose of this holding was to protect the suspect's Fourth Amendment privacy interests in the location of the arrest, i.e., his own home.[5] The *Payton* Court did not foreclose the possibility that

---

[4] The statute reads in part:

(1) A peace officer may, without a warrant, arrest a person in the following situations:

(a) When a felony, misdemeanor, or ordinance violation is committed in the peace officer's presence.

(b) When the person has committed a felony although not in the presence of the peace officer.

(c) When a felony in fact has been committed and the peace officer has reasonable cause to believe that the person has committed it.

(d) When the peace officer has reasonable cause to believe that a felony has been committed and reasonable cause to believe that the person has committed it.

[5] It is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable. Yet it is also well settled that objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity. . . .

\* \* \*

[T]his distinction has equal force when the seizure of a

a search warrant could be used to protect that interest.[6] As stated by the dissenters in the New York Court of Appeals decision,[7] which was reversed by the United States Supreme Court, what underlies the *Payton* problem is the "necessity of prior judicial approval [of] any contemplated entry, regardless of the purpose for which entry is sought."[8]

We conclude that defendant's privacy interest in his home was adequately protected in this case. While we have stated above that a search warrant cannot serve as the sole basis for the seizure of a suspect, a neutral magistrate did make a determination that there was probable cause to believe that defendant resided and would be present at the place to be searched. This, combined with the

person is involved. Writing on the constitutional issue now before us for the United States Court of Appeals for the District of Columbia Circuit sitting en banc, *Dorman v United States*, 140 US App DC 313; 435 F2d 385 (1970), Judge Leventhal first noted the settled rule that warrantless arrests in public places are valid. He immediately recognized, however, that

"[a] greater burden is placed . . . on officials who enter a home or dwelling without consent. Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Id.,* at 317; 435 F2d, at 389. (Footnote omitted.)

[Judge Leventhal] reasoned that the constitutional protection afforded to the individual's interest in the privacy of his own home is equally applicable to a warrantless entry for the purpose of arresting a resident of the house; for it is inherent in such an entry that a search for the suspect may be required before he can be apprehended. [He] concluded that an entry to arrest and an entry to search for and to seize property implicate the same interest in preserving the privacy and the sanctity of the home, and justify the same level of constitutional protection. [*Payton, supra,* 445 US 586-588.]

[6] Given the existence of probable cause to arrest, the *Payton* Court noted that "an arrest warrant requirement may afford less protection [of the privacy interest in one's home] than a search warrant requirement . . . ." *Payton, supra,* 445 US 602.

[7] *New York v Payton,* 45 NY2d 300; 380 NE2d 224 (1978).

[8] *Id.* at 321 (Cooke, J., dissenting).

pre-warrant existence of probable cause to arrest, leads us to conclude that the fruits of defendant's arrest, i.e., the photographs, need not be suppressed.[9] We need not hold that the search warrant falls within the search warrant statute, MCL 780.652(d); MSA 28.1259(2)(d), nor that it can serve as a basis for arrest in order to recognize that, in the unique circumstances of this case, it satisfies the privacy concerns raised in *Payton*.[10] The clearest course under *Payton* and *Oliver* would have been for the police to have obtained an arrest warrant. However, we conclude that in this special setting, the magistrate's issuance of the search warrant, while not a basis for either a search for or a seizure of defendant under Michigan statutory law, "interpose[d] [a] magistrate's determination of probable cause"[11] to search and thereby removed

[9] In light of this conclusion, we do not reach the inevitable discovery issue raised by the parties.

[10] "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." [*Id.*, 445 US 586, n 24 (quoting *Johnson v United States*, 333 US 10, 13-14; 68 S Ct 367; 92 L Ed 436 [1948]).]

[11] *Payton, supra,* 445 US 602.

any Fourth Amendment barrier to the arrest of defendant in his home, rather than in a public place, in light of the fact that there was probable cause to arrest, independent of the search warrant.[12]

IV

The remaining question concerns the propriety of the identification procedure employed. After arresting the defendant, the police did not take him to the station in order to accomplish a corporeal line-up. Instead, the police offered him a choice. He could either consent to appear at the sheriff's department for a corporeal line-up or he could allow the police to take his photograph for use in a later photographic line-up. As stated *ante*, p 686, defendant initially refused to do either. After being told that he could not refuse both procedures, he acquiesced in being photographed. At the preliminary examination, defense counsel argued that this procedure violated Michigan evidentiary rules concerning line-up identifications. These rules provide that where a suspect is in custody, even prior to the initiation of judicial proceedings against him, he must be given a corporeal rather than a photographic line-up unless certain exceptional circumstances exist,[13] and even then he

---

[12] By recognizing the import of the magistrate's determination for the limited purpose of protecting the privacy of defendant's home, we do not suggest that a magistrate's determination that there is probable cause to believe that a suspect can be located at his or a third party's home can be the basis for an appellate court to conclude that there was probable cause to arrest.

[13] The exceptions provided for in *People v Franklin Anderson*, 389 Mich 155, 186-187, n 22; 205 NW2d 461 (1973), are:

   1. It is not possible to arrange a proper line-up.
   2. There are insufficient numbers of persons available with defendant's physical characteristics.
   3. The nature of the case requires *immediate* identification.

must be afforded "the right to counsel as much as he would for corporeal identification procedures." *People v Franklin Anderson,* 389 Mich 155, 187; 205 NW2d 461 (1973).[14]

The magistrate rejected this argument on the grounds that defendant was not in custody at the time of the line-up. In his appeal before the Court of Appeals, without squarely appealing the identification procedure, defendant nonetheless did argue that, in using a search warrant to place him under police control, the police avoided the protection afforded under Michigan evidentiary law regarding line-up procedures.[15]

In light of the Court of Appeals opinion and the imprecision in the order granting leave to appeal to this Court, the issue whether the identification procedure used in this case complied with *Anderson* and our other decisions in this area[16] has not been clearly considered below or briefed here, even though it was implicated throughout defendant's arguments. We therefore remand this case to the Court of Appeals for reconsideration of the issue whether the use of an uncounseled photographic line-up was consistent with *Anderson* under the circumstances of this case in which the defendant was photographed while under arrest, but was

4. The witnesses are at a place far distant from the location of the in-custody accused.

5. The subject refuses to participate in a line-up and by his actions would seek to destroy the value of the identification.

[14] As set forth in detail in *Anderson,* n 13 *supra,* p 187, the purpose of the rules is to ensure that the dangers of misidentification are minimized.

[15] Essentially, what the police did was arrest the Defendant, · take his photo, release him and then held a photo line-up since he was not then in custody.

[16] See *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974); *People v James Anderson,* 391 Mich 419; 216 NW2d 780 (1974); *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974); *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977).

released from custody prior to the time of the line-up.

If the Court of Appeals concludes that the identification procedure used was consistent with *Anderson,* no further issues need be addressed by that Court. Should the Court conclude that the procedure was not consistent with *Anderson,* it should then determine whether there was an independent basis for complainant's in-court identification and, if so, whether the improper admission of the results of the photographic line-up was harmless. *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977).

RILEY, C.J., and CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with BRICKLEY, J.

LEVIN, J. I concur in the result.

BOYLE, J. I concur on the basis that the warrant in question did not authorize the arrest of the defendant and that the statute does not authorize a seizure of an individual *as evidence.* I write separately to emphasize my view that the proper focus of the inquiry regarding the admissibility of this evidence is whether it was seized in compliance with the command of the Fourth Amendment.

The legislative history of the statute indicates that the Legislature intended to broaden the scope of permissible objects of a search warrant, as defined in *Warden v Hayden,* 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967). In *Warden,* the Court rejected the distinction previously made between the seizure of items of evidential value only and the seizure of instrumentalities, or fruits of a crime or contraband.

Speaking for the Court, Justice Brennan noted the rejection of property premises as the basis for

application of the Fourth Amendment and observed that the principle object of the Fourth Amendment is the protection of privacy afforded by the evaluation of a neutral magistrate. The Court held that "[t]he requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for 'mere evidence' or for fruits, instrumentalities or contraband," and that "in the case of 'mere evidence' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Id.* at 306-307.

The predecessor of the statute involved in this case, 1948 CL 776.1, 776.2; MSA 28.1259, 28.1260 authorized warrants only to search for and seize instrumentalities or fruits of crime or contraband.

It is evident that the Legislature broadened the scope of the current statute to permit a search for "[e]vidence of crime or criminal conduct on the part of any person." Thus, if the warrant in this case had authorized the seizure of already existing photographs of the defendant, the statute would authorize their seizure.

However, just as it is likely that the Legislature intended to expand the search warrant statute to permit the seizure of all evidence that could be obtained in compliance with the constitution, we cannot assume that the Legislature intended to permit a seizure of an individual by process that does not safeguard Fourth Amendment interests. Thus, because we proceed here on the basis that the defendant was arrested[1] prior to the photographs being taken, I agree that neither the

---

[1] We, therefore, do not reach the issue as to whether a brief detention of an individual on less than probable cause for the purpose of taking photos under the judicial supervision of a warrant establishing probable cause for a search comports with the Fourth Amendment. See dictum in *Hayes v Florida,* 470 US 811; 105 S Ct 1643; 84 L

search warrant statute nor the warrant authorized the seizure of the person *as evidence.*[2]

As Justice Brickley concludes, whether the warrant in this case adequately safeguarded the interests protected by the Fourth Amendment depends on what the warrant authorized the police to do. The warrant embodied a judicial finding that there was probable cause to believe defendant would be found on the premises. However, although the affidavit set forth probable cause for arrest, the warrant did not in terms embody a judicial finding that there was probable cause to believe that the defendant had committed a felony. Thus, to paraphrase the language in *Steagald v United States,* 451 US 204; 101 S Ct 1642; 68 L Ed 2d 38 (1981), while the warrant in this case protected defendant's privacy interest in being free from an unreasonable search, the magistrate did not determine that an arrest of the defendant was reasonable.[3]

Recognizing that we do not decide today that the same instrument may not authorize both a search

Ed 2d 705 (1985). The Fourth Amendment may permit a seizure for the purpose of fingerprinting if there is reasonable suspicion that the suspect has committed a criminal act, "if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime, and if the procedure is carried out with dispatch." *Id.* at 817. "[T]he line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home . . . and transport him to the police station, where he is detained, although briefly, for investigative purposes. . . . [S]uch seizures, at least where not under judicial supervision, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause. *Id.* at 816.

[2] The Federal Rule of Criminal Procedure which previously authorized the seizure of instrumentalities, fruits, contraband, and property that "constitutes evidence of the commission of a criminal offense" has been amended to permit a search warrant to be issued for a "person for whose arrest there is probable cause . . . ." FR Crim P 41(b).

[3] I agree that there was probable cause justifying an arrest without a warrant.

and an arrest or that suppression of evidence so obtained is appropriate where evidence is seized in compliance with the constitution, although not specifically authorized by statute, I concur in today's decision.