# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

JOHN BUTSINAS,

          Defendant-Appellant.

UNPUBLISHED
October 15, 2015

No. 322390
Macomb Circuit Court
LC No. 2013-002374-FH

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

A jury convicted defendant of possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), tampering with evidence, MCL 750.483a(6)(a), resisting or obstructing a police officer resulting in injury, MCL 750.81d(2), and resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to a prison term of 29 to 180 months for each conviction, to be served concurrently. Defendant appeals as of right, and we affirm.

A confidential informant contacted the police with information regarding defendant's possession of a quantity of narcotics. The informant identified defendant by name, indicated that he was driving a silver Porsche SUV, and would be arriving at the Super Eight Motel in Roseville. The motel was located in a "high intensity narcotic trafficking area." Detective Brian Shock proceeded to the motel and set up surveillance. About 10 or 15 minutes later, he observed defendant arrive at the motel in a silver Porsche. After defendant parked his vehicle, Detective Shock parked his own vehicle behind defendant's vehicle and approached the vehicle on foot. He observed defendant moving around inside the vehicle. Defendant appeared nervous, looked all around, and appeared as if he was trying to conceal something. Detective Shock ordered defendant to stop moving and exit the vehicle. Defendant admitted possessing a crack pipe, but was uncooperative and resisted the officer's attempt to subdue him. During an ensuing struggle, defendant removed a plastic bag corner containing suspected cocaine from his pocket, put it in his mouth, and then spit out the substance. Another officer arrived to assist Detective Shock, and defendant continued to kick, spit, and resist until the officers were able to handcuff his hands behind his back. A large sum of currency and a digital scale with cocaine residue were found in defendant's car.

# I. MOTION TO SUPPRESS

Defendant argues that he was illegally stopped and arrested by the police, and the trial court therefore erred in denying his motion to suppress the evidence. The trial court's ultimate decision on a motion to suppress evidence is reviewed de novo, but its findings of fact are reviewed for clear error. *People v Barbarich*, 291 Mich App 468, 471; 807 NW2d 56 (2011). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.* (citation and internal quotations omitted).

The Fourth Amendment of the United States Constitution and the Michigan Constitution both protect persons from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *Barbarich*, 291 Mich App at 472. "The Michigan Constitution is construed to provide the same protection as that provided by the Fourth Amendment absent a compelling reason to do otherwise." *Id*. n 1.

The police can arrest a person without a warrant if they have probable cause to believe that a felony has been committed and that the defendant committed it. MCL 764.15(1)(d); *People v Johnson,* 431 Mich 683, 691; 431 NW2d 825 (1988). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Champion,* 452 Mich 92, 115; 549 NW2d 849 (1996). A court evaluating probable cause "must determine whether the facts available to the arresting officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected individual had committed the felony." *People v Kelly*, 231 Mich App 627, 631; 588 NW2d 480 (1998).

A police officer may also briefly stop and detain a person, known as a *Terry*[1] stop, to investigate possible criminal activity if he has a reasonable suspicion based on specific and articulable facts that the person detained has committed or is committing a crime. *People v Shankle*, 227 Mich App 690, 693; 577 NW2d 471 (1998). In *Barbarich*, 291 Mich App at 473, this Court summarized the principles applicable to a *Terry* stop as follows:

> [I]f a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances, the officer may briefly stop that person for further investigation. *People v Christie (On Remand),* 206 Mich App 304, 308; 520 NW2d 647 (1994), citing *Terry.* Moreover, under *Terry,* a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even if probable cause does not exist to arrest the person. *Terry,* 392 US at 22; 88 S Ct 1868; *People v Jenkins,* 472 Mich 26, 32; 691 NW2d 759 (2005). The scope of any search or seizure must be limited to that which is necessary to

---

[1] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

quickly confirm or dispel the officer's suspicion. *People v Yeoman,* 218 Mich App 406, 411; 554 NW2d 577 (1996).

During an investigative *Terry* stop, the police may secure or restrain a person for safety reasons, and such restraint does not constitute an arrest and is not an unreasonable seizure under the Fourth Amendment. *People v Green,* 260 Mich App 392, 397-398; 677 NW2d 363 (2004), overruled in part on other grounds in *People v Anstey,* 476 Mich 436, 447 n 9; 719 NW2d 579 (2006); see also *People v Custer,* 465 Mich 319, 328; 630 NW2d 870 (2001). A defendant's furtive gestures, or unusual or extreme nervousness lasting throughout an investigative stop, may justify an officer's concern for safety under the totality of the circumstances. See *People v Lewis,* 251 Mich App 58, 72; 649 NW2d 792 (2002), and *People v Balog,* 56 Mich App 624, 627; 224 NW2d 725 (1974).

In circumstances involving an anonymous informant's tip, "courts must examine whether the tipster's information contained sufficient indicia of reliability to provide law enforcement with a reasonable suspicion that would justify the stop." *Barbarich*, 291 Mich App at 474. The court must "consider, given the totality of the circumstances, '(1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors.'" *Id.*

In *Barbarich*, the defendant's vehicle was stopped by a state trooper after another motorist reported that the defendant almost hit her. The other motorist "mouthed the words 'almost hit me'" and pointed to the defendant's vehicle while the trooper was driving alongside her. Although the trooper did not personally observe the defendant driving in a manner that would have justified a stop, and he did not attempt to speak to the other motorist to get more information, this Court concluded that the trooper had a reasonable, articulable suspicion of criminal activity to justify an investigative stop because the anonymous motorist's tip "provided sufficient information to accurately identify the vehicle and create an inference that a crime or civil infraction had occurred, and the tip was also sufficiently reliable, being based on the woman's contemporaneous observations." *Id.* at 470-471, 482.

In *People v Dunbar*, 264 Mich App 240; 690 NW2d 476 (2004), overruled on other grounds in *People v Jackson*, 483 Mich 271; 769 NW2d 630 (2009), officers stopped the defendant's vehicle based on information from a confidential informant that the defendant was in possession of cocaine. The officers had prior experience with the informant, including one officer's personal involvement in three previous drug buys made by the informant. One of the officers observed the informant meet with the defendant in front of and then behind a store. 264 Mich App at 243-244. Based on this information, the officers detained the defendant by blocking his way with police vehicles. The officers ordered the defendant to remove his hands from his pockets, but the defendant at first removed only his right hand. When he obeyed the officers' second command to raise both hands, he had in his left hand a small clear plastic bag that appeared to contain other packages of green and white substances. The defendant dropped two bags when one of the officers made contact with his left arm. *Id.* at 245. This Court considered "all the facts known to the officers at the time they approached defendant to determine whether these facts constituted reasonable suspicion that defendant was involved in an illegal activity." *Id.* at 247. This Court concluded that the officer reasonably relied on the informant's information because the officer considered the informant to be reliable, and the

officer observed the defendant meet with the informant at the location foretold by the informant. This Court concluded that "the trial court did not clearly err in concluding that there was sufficient indicia of reliability to provide the police with reasonable suspicion that defendant had just been involved in criminal activity, which justified the forcible stop." *Id.* at 250. The *Dunbar* Court further held that the defendant's conduct with the two plastic bags justified the arrest without a warrant. *Id.* at 250-251.

In the instant case, the confidential informant's information, the reliability of which was confirmed by police surveillance, was sufficient to establish a reasonable and particularized suspicion that defendant was in possession of narcotics to justify a *Terry* stop for further investigation. The fact that the information was provided shortly before defendant's arrival at the motel, and that the informant identified defendant by name, expressed knowledge of the type of vehicle he was driving, his destination, and his anticipated arrival suggested that the informant's information was based on recently acquired personal knowledge. The informant reported that defendant was on his way to the Super Eight Motel in Roseville, driving a silver Porsche SUV. Detective Shock testified that the informant had provided credible information on past occasions. Although Shock did not testify regarding any specific past experiences with the informant, he was able to confirm the reliability of the informant's information when he set up surveillance and observed defendant arrive at the stated location, at the anticipated time, in the vehicle described by the informant. Shock also knew from his experience that the motel was in a "high intensity narcotic trafficking area." Considering the totality of the circumstances, the informant's tip was sufficient to establish a reasonable and particularized suspicion that defendant was in possession of cocaine to justify an investigatory stop.

Once defendant was detained, he acted nervously, attempted to hide or retrieve something while he was still in the car, and admitted that he had a crack pipe in his pocket. During the detention, defendant was uncooperative and ignored commands to show his hands. Detective Shock became concerned for his safety because he was the only officer present, defendant was acting nervous, and defendant was not cooperating. These circumstances justified Detective Shock's attempt to restrain defendant during the investigatory stop. Defendant resisted and pulled out a corner of a clear plastic bag from his pocket that contained a white powder, which Shock suspected was cocaine, and put the bag in his mouth. Defendant's uncooperative conduct during the detention, combined with his previous admission that he possessed a crack pipe, and his placement of the plastic bag corner with suspected cocaine in his mouth, provided probable cause to believe that defendant was in possession of cocaine to justify defendant's arrest without a warrant. Because defendant's initial detention and subsequent arrest were legal, the trial court did not err in denying defendant's motion to suppress.

## II. JURY SELECTION

Defendant argues that the prosecutor improperly used a peremptory challenge to excuse a black juror on the basis of the juror's race, contrary to *Batson v Kentucky*, 476 US 79, 89; 106 S Ct 1712; 90 L Ed 2d 69 (1986). He also argues that the trial court erred in dismissing another black juror for cause.

## A. *BATSON* CHALLENGE

In *Batson*, 476 US at 89, the United States Supreme Court held:

Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, *United States v Robinson,* 421 F Supp 467, 473 (Conn 1976), mandamus granted *sub nom. United States v Newman,* 549 F2d 240 (CA2 1977), the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

In *People v Armstrong*, 305 Mich App 230, 237-238; 851 NW2d 856 (2014), this Court explained that evaluation of a *Batson* challenge involves a three-step process:

First, the defendant must show a prima facie case of discrimination. Second, the prosecutor may rebut the defendant's prima facie case with a race-neutral reason for dismissing the juror. Third, the trial court must determine whether the prosecutor's explanation is a pretext for discrimination. [*Id.* at 238.]

In *People v Knight*, 473 Mich 324, 345; 701 NW2d 715 (2005), our Supreme Court summarized the appropriate standard of review for a *Batson* challenge as follows:

In sum, we conclude that the proper standard of review depends on which *Batson* step is before us. If the first step is at issue (whether the opponent of the challenge has satisfied his burden of demonstrating a prima facie case of discrimination), we review the trial court's underlying factual findings for clear error, and we review questions of law de novo. If *Batson*'s second step is implicated (whether the proponent of the peremptory challenge articulates a race-neutral explanation as a matter of law), we review the proffered explanation de novo. Finally, if the third step is at issue (the trial court's determinations whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination), we review the trial court's ruling for clear error.

In this case, the trial court concluded that defendant established a prima facie case of discrimination when the prosecutor used a peremptory challenge to excuse Juror No. 216, the only black person among the prospective jurors seated for voir dire. "[I]f the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike." *Knight*, 473 Mich at 337. This step does not require " 'an explanation that is persuasive, or even plausible,' " because the pertinent question is "whether the proponent's explanation is facially valid as a matter of law. *Id.* at 337, quoting *Purkett v Elem*, 514 US 765, 768; 115 S Ct 1769; 131 L Ed 2d 834 (1995). " 'A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. . . . Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Knight*, 473 Mich at

*337, quoting *Hernandez v New York*, 500 US 352, 360; 111 S Ct 1859; 114 L Ed 2d 395 (1991) (plurality opinion). Here, the prosecutor explained that he exercised a peremptory challenge to dismiss Juror No. 216 because the juror's responses to questions during voir dire revealed an unwillingness to accept that a police officer's use of force against a person could ever be justified. This reason was grounded in the juror's responses to questions during voir dire, and was unrelated to the juror's race. The trial court did not err in concluding that the prosecutor offered a race-neutral explanation for the juror's exclusion.

With respect to the third step, the trial court credited the prosecutor's race-neutral explanation for excusing Juror No. 216, and found that it was not a pretext for discrimination. The trial court's determination is accorded great deference. *Knight*, 473 Mich at 344. Defendant was charged with two counts of resisting or obstructing a police officer, and the prosecutor intended to present evidence of a struggle between defendant and two officers. Juror No. 216 revealed that he had observed two prior incidents in which he believed the police had wrongfully exerted force against another person. The prosecutor asked the juror several times if he believed that the police were ever justified in using force against a person, and the juror responded by explaining that he could only comment on what he had actually seen, and every time he had seen the police use force, he believed it was wrongful. The juror was reluctant to acknowledge that the use of force by the police could sometimes be justified. Considering the nature of the charges against defendant and the anticipated evidence, and the juror's expressed views during voir dire, the prosecutor had legitimate concerns, unrelated to the juror's race, about the juror's ability to fairly serve on the jury. Accordingly, the trial court did not clearly err in finding that the prosecutor's proffered race-neutral explanation for excusing the juror was credible, and in thereby rejecting defendant's *Batson* challenge.

## B. DISMISSAL FOR CAUSE

Defendant also argues that the trial court erred by dismissing for cause Juror No. 644, who was also a black juror and the last person available to seat a racially diverse jury. This Court reviews a trial court's decision regarding challenges for cause for an abuse of discretion. *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Unger (On Remand)*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Under MCR 2.511(D)(2) and (3), a juror may be challenged for cause if he "is biased for or against a party" or he "shows a state of mind that will prevent the person from rendering a just verdict . . . ." Juror No. 644 indicated that he had health problems that prevented him from sitting for a two-hour period and affected his ability to render a fair and impartial verdict. Upon further questioning, he stated that he had difficulty concentrating, becomes "uncomfortable" and "a little paranoid," and "do[es not] function in [his] mind sometimes." Although he denied any bias toward the police, prosecutors, or defense attorneys, he stated that his health problems would interfere with his ability to be an impartial juror. Because the juror's answers revealed a state of mind that would prevent him from rendering a just verdict, the trial court did not abuse its discretion in dismissing him for cause.

### III.  SENTENCING ISSUES

Defendant challenges the scoring of two offense variables, and argues that the trial court erred by failing to separately score the guidelines for each of his convictions.

### A.  SCORING OF OFFENSE VARIABLES 3 AND 19

Defendant preserved his challenge to the scoring of offense variable (OV) 3 with an appropriate objection at sentencing.  MCL 769.34(10).  Although defendant also objected to the scoring of OV 19, he did so on a ground different from the ground he asserts on appeal.  An objection on one ground is insufficient to preserve an appellate attack on a different ground.  *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996).  Accordingly, defendant's challenge to the scoring of OV 19 is not preserved.

This Court reviews the trial court's factual determinations in scoring the guidelines for clear error.  *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  The trial court's factual findings "must be supported by a preponderance of the evidence."  *Id.*  "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo."  *Id.*  Unpreserved claims are reviewed for plain error affecting the defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Defendant argues that the trial court erred in assessing 10 points for OV 3, physical injury to a victim.  A 10-point score is appropriate where "[b]odily injury requiring medical treatment occurred to a victim."  MCL 777.33(1)(d).  The phrase " 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment."  MCL 777.33(3).  At trial, Detective Shock testified that he injured his back during his struggle with defendant.  He further testified that he went to the clinic for the back injury, saw a doctor, and received treatment for his injury.  In light of this testimony, the trial court did not clearly err in assessing 10 points for OV 3.

With respect to OV 19, interference with the administration of justice, defendant challenges the trial court's assessment of 15 points, which are to be assigned when "[t]he offender used force or the threat of force against another person . . . to interfere with, attempt to interfere with, or that results in the interference with the administration of justice."  MCL 77.49(b).  Detective Shock testified that defendant physically resisted Shock's efforts to restrain defendant, and that defendant reached into his pocket, removed a corner baggie containing suspected cocaine, placed the substance in his mouth, and then spit it out.  Defendant's use of force in an effort to destroy evidence, which interfered with the administration of justice, justified the 15-point score for OV 19.  Indeed, defendant does not contest the facts that support the trial court's scoring of OV 19, but rather argues that it was improper to score the variable because his arrest was illegal.  As previously explained, however, the trial court did not err in concluding that defendant's initial detention and subsequent arrest were legal.  Accordingly, we reject defendant's challenge to the scoring of OV 19.

## B. FAILURE TO SCORE THE GUIDELINES FOR EACH CONVICTION

Defendant argues that the trial court erred by failing to score the guidelines for each conviction. Defendant did not argue below that the trial court was obligated to score the guidelines for each offense. Therefore, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. Because defendant was sentenced to concurrent prison terms, the trial court was not required to independently score the guidelines for each conviction, but rather was only required to score the guidelines for defendant's conviction of resisting or obstructing a police officer causing injury, the conviction with the highest crime classification. *People v Lopez*, 305 Mich App 686; 854 NW2d 205 (2014); *People v Mack*, 265 Mich App 122; 695 NW2d 342 (2005). Accordingly, there was no error.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy