KELLY, J.
(dissenting). The issue here is whether certain police conduct constituted a constructive entry into defendant’s home, violating the Fourth Amendment of the United States Constitution, invalidating the arrest, and rendering inadmissible the evidence later obtained.
The constructive entry doctrine is widely recognized. It is applicable in the instant case where the police created an excited environment and refused to respect defendant’s repeated refusals to leave his home. Accordingly, I would affirm the judgment of the Court of Appeals and hold that the trial court properly suppressed the evidence that was seized after defendant’s arrest.
THE APPLICABLE STANDARDS OF REVIEW
This Court reviews legal conclusions de novo and a trial court’s findings of fact at a suppression hearing for clear error. People v Williams, 472 Mich 308, 313; 696 NW2d 636 (2005).[1] Constitutional questions are reviewed de novo. Michigan Chiropractic Council v Comm’r of the Office of Financial & Ins Services, 475 Mich 363, 369; 716 NW2d 561 (2006).
*271 THE CONSTRUCTIVE ENTRY DOCTRINE
The Fourth Amendment Of the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV]
In Michigan, the police do not generally need a warrant to arrest a person when they have probable cause to believe that the person has committed a felony. People v Johnson, 431 Mich 683, 690-691; 431 NW2d 825 (1988). MCL 764.15(1) lists the circumstances under which a police officer may effectuate an arrest without a warrant.[2] However, a warrant is generally required to arrest a person in his or her home.
In Payton v New York [3] the United States Supreme Court held that the Fourth Amendment prohibits the police from making a nonconsensual entry into a suspect’s home without a warrant in order to make a routine felony arrest. Payton, 445 US at 576. The Court stated that “ ‘physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.’ ” Id. at 585, quoting United States v United States District Court, 407 US 297, 313; 92 S Ct 2125; 32 L Ed 2d 752 (1972).
*272 The Court further recognized that it is a “ ‘basic principle of Fourth Amendment law’ ” that searches and seizures inside a home without a warrant are presumptively unreasonable. Payton, 445 US at 587 (citation omitted). The Court specifically drew the line between searches and seizures that do not violate the Fourth Amendment and those that do. The line was drawn at the entrance to the home:
The Fourth Amendment protects the individual’s privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual’s home — a zone that finds its roots in clear and specific constitutional terms: “The right of the people to be secure in their ... houses ... shall not be violated.” That language unequivocally establishes the proposition that “[at] the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.” [Silverman v United States, 365 US 505, 511; 81 S Ct 679; 5 L Ed 2d 734 (1961).] In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant. [Id. at 589-590.]
Numerous courts have interpreted Payton as prohibiting not only physical entries into a person’s home to effectuate an arrest without a warrant, but constructive entries as well. The Third Circuit Court of Appeals, in Sharrar v Felsing,[4] found a constructive entry where there was a “clear show of physical force and assertion of authority.” In United States v Morgan,[5] the Sixth Circuit Court of Appeals stated that either a constructive entry or a direct entry into the home would *273 constitute an arrest. The Ninth Circuit Court of Appeals in United States v Al-Azzawy,[6] found a constructive entry where the suspect was not free to leave, his movement was restricted, and the officers’ show of force and authority was overwhelming. The Tenth Circuit Court of Appeals in United States v Maez,[7] found that Payton is violated where there is “such a show of force that a defendant comes out of a home under coercion and submits to being taken into custody.”[8]
The constructive entry doctrine is a valid legal doctrine that protects individual liberties and safeguards individuals’ Fourth Amendment rights. It respects the United States Supreme Court’s decision in Payton, which drew a “firm line at the entrance to the house.” Payton, 445 US at 590. Equally important, the constructive entry doctrine recognizes that officers cannot do through coercive tactics and the abuse of authority what they cannot do physically: they cannot enter someone’s home to effectuate an arrest without a warrant. As noted by the Sixth Circuit Court of Ap *274 peals, “[a] contrary rule would undermine the constitutional precepts emphasized in Payton.” United States v Morgan, 743 F2d 1158, 1116 (CA 6, 1984).
Application of the constructive entry doctrine inherently requires a case-by-case analysis to determine whether the police conduct constituted a constructive entry. A majority of this Court concludes that the conduct in this case did not constitute a constructive entry. It arrives at this conclusion by noting that the facts are not as egregious as those in other cases. Here, the police did not use floodlights and bullhorns[9] or draw their weapons and place defendant in fear of being shot.[10] However, unlike the majority, I believe that a defendant’s Fourth Amendment rights may be violated even though the police conduct was less egregious than that in the most extreme factual settings.
The decision should be made on the basis of the degree of coerciveness of the police conduct. The most relevant question is whether a reasonable person would feel compelled to leave the house.[11]
*275 In this case, the trial court believed defendant’s version of the events. Defendant explained that, at the time in question, he had been confined to his apartment on house arrest and was on a tether. The police knocked on his door. He opened it, and the police asked him to come out. According to defendant, he replied that he could not come out because he was on a tether. It is undisputed that there was a repeated verbal exchange between the police and defendant in which the police told defendant to come out and he declined to do so. Defendant eventually emerged from the apartment “because there was an officer to [his] right [and] something about it [made him] feel threatened.” Defendant testified that he came out in what he described as an exited atmosphere,[12] that he did not leave his apartment voluntarily, and that he felt coerced by the officers.
*276 Given these facts, I would conclude that the police made a constructive entry. The uniformed police officers created an excited and coercive atmosphere. They refused to acknowledge or respect defendant’s repeated refusals to leave his apartment. They made it clear that they would not take “no” for an answer and would continue to ask defendant to step out despite his repeated refusals to do so.
Moreover, before the police arrived at defendant’s door, they knew that he was on house arrest with a tether. When they called out to him, defendant told them that he could not leave his apartment because he was on a tether. At the suppression hearing, the trial court believed defendant’s testimony and noted that defendant knew the “meets [sic] and bounds” of the tether system. Moreover, when questioned by the tried court, an officer admitted that it was possible that defendant’s tether had been set up so that he could not leave the apartment.
The fact that defendant was on a tether further supports the finding that there was a constructive entry. Defendant was under a court order to remain in his apartment, and yet the police officers repeatedly demanded that he leave it. Under this situation, a reasonable person would have felt coerced to leave his or her residence.[13] The majority contends that the facts of this case are similar to those in United States v *277 Thomas,[14] in which the Sixth Circuit Court of Appeals concluded that there was no constructive entry. In that case, officers knocked on the door of the defendant’s residence. Id. at 276. When the defendant opened the door, the officers told him that the investigators wanted to talk to him and asked him to come out of the residence. Id. Without objection, the defendant came out of the residence, and the police arrested him. Id.
There are several important distinctions between the facts in Thomas and those in the instant case. In Thomas, the police made only one request of the defendant, who was not under house arrest, to come out of the residence. In the instant case, the police knew that defendant was under house arrest and refused to accept his repeated refusals to leave his residence. Unlike in Thomas, the instant facts do not reveal a calm single request to leave the residence. Rather, they reveal excited, repeated demands for a person under house arrest to leave his residence.
The majority attempts also to distinguish the instant case from Boykin v Van Buren Twp, 479 F3d 444 (CA 6, 2007). In Boykin, the police came to the defendant’s house and stated, among other things, “ ‘I’m trying to avoid coming into your home and dragging you out of your home .... And we’re going to do that if you don’t listen to us.’ ” Id. at 450 n 2. The Sixth Circuit Court of Appeals opined that, had the issue been briefed, the *278 Court would have been inclined to find a constructive entry into the defendant’s home in violation of Payton. Id.
In attempting to distinguish the instant facts from those of Boykin, the majority misses a crucial part of the Boykin commentary. Specifically, the Sixth Circuit recognized that coercive statements alone could invoke the constructive entry doctrine. This recognition necessarily belies the majority’s inference that only overt physical acts, such as using a bullhorn or brandishing machine guns, could constitute a constructive entry.
It should be noted, also, that the majority opinion risks establishing bad public policy. It discourages people from opening their door to police officers. Essentially, it signals to the public that it is acceptable for the police to ignore a person’s repeated refusals to leave his or her home and sanctuary. Hence, people might conclude that they should not open their doors when they see police officers on the other side. This Court should encourage, not discourage, the public to assist the police in their lawful investigations.[15]
CONCLUSION
For the reasons I have discussed, I would affirm the judgment of the Court of Appeals and hold that the trial court properly excluded the evidence seized. A constructive entry occurred when the police created an excited *279 environment and coerced defendant who was on a tether into leaving his apartment in order to arrest him.
CAVANAGH, J., concurred with KELLY, J.

 I note that the Sixth Circuit Court of Appeals has concluded that the legal finding that a seizure occurred is reviewed de novo; the underlying factual findings are reviewed for clear error. See United States v Buchanan, 72 F3d 1217, 1222-1223 (CA 6, 1995).

 In the instant case, it is undisputed that the police did not obtain an arrest warrant before arriving at defendant’s apartment. However, at the suppression hearing, the trial court determined that the police had probable cause to get an arrest warrant. I will assume that the police had probable cause to believe that defendant committed a felony and therefore could have effectuated a lawful arrest without a warrant.

 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980).

 128 F3d 810, 819 (CA 3, 1997).

 743 F2d 1158, 1166 (CA 6, 1984).

 784 F2d 890, 893 (CA 9, 1985).

 872 F2d 1444, 1451 (CA 10, 1989).

 A number of courts have not had the opportunity to discuss the constructive doctrine entry. See, e.g., United, States v Beaudoin, 362 F3d 60, 68 (CA 1, 2004), citing Joyce v Town of Tewksbury, 112 F3d 19 (CA 1,1997) (noting that a there is no settled answer to the constitutionality of doorway arrests), and United States v Gori, 230 F3d 44, 52 n 2 (CA 2,2000) (declining to address the questions presented when the police surround a dwelling, flood it with search lights, and order evacuation over a bullhorn).
Other courts have indicated that the Fourth Amendment is not violated as long as the officers do not cross the physical threshold of the entrance to the home. See, e.g., United States v Carrion, 809 F2d 1120, 1128 (CA 5, 1987) (holding that Payton was not violated when the police, without crossing the threshold, pointed guns at and arrested the defendant when he was still in a hotel room), and United States v Berkowitz, 927 F2d 1376, 1386 (CA 7, 1991) (Payton prohibits an entry into a home without a warrant, not an officer’s use of his or her voice to convey a message of arrest from outside the home).

 Morgan, 743 F2d at 1161, 1164.

 United States v Saari, 272 F3d 804, 806-807 (CA 6, 2001).

 See United States v Thomas, 430 F3d 274, 278 (CA 6, 2005) (there was no constructive entry where there was no indication that “a reasonable person, confronted with a knock on the door by police officers, would believe without more that he was either under arrest or otherwise compelled to leave the house”); Sharrar, 128 F3d at 819 (no reasonable person would have believed himself free to remain in the house when the police surrounded the house, pointed machine guns at the windows, and ordered the occupants out).
Justice Weaver agrees that the constructive entry doctrine applies when a person is arrested after the police engage in coercive conduct that would compel a reasonable person to leave his or her home. However, she proposes a new test for determining whether a constructive entry has occurred and the Fourth Amendment has been violated. Under her theory, a constructive entry occurs when the police conduct would lead a reasonable person to believe that he or she must step outside his or her home. Otherwise, it must appear to the person, the officers would cross the threshold to arrest him or *275 her. I cannot agree that the police may use any degree of coercive conduct or threats so long as they stop short of indicating that they -will physically cross the threshold. Under Justice Weaver’s test, the police could station machine guns, bullhorns, floodlights, and barking attack dogs outside a person’s door indefinitely. As long as they did not threaten to physically cross the threshold of the person’s home, there would be no constructive entry. It seems beyond argument that the Fourth Amendment affords greater protection than that.

 The majority takes issue with my characterization of the situation as an excited atmosphere. Defendant testified that the situation could be described as an excited atmosphere and, as recognized by the majority, the trial court believed his version of the events.
I do not find credible the majority’s view that the police made no coercive statements to defendant. Even assuming that the officers’ requests to defendant that he step outside were polite, by dint of their persistent repetition, they became coercive. That combined with the excited atmosphere created by the police, and the fact that defendant was on tether, enhanced the coercive environment. As recognized by the majority, the trial court stated, “In any event, I think [defendant] was, in some manner or another, caused to step outside and be arrested.” Therefore, the trial court explicitly found that the police coerced defendant into leaving his apartment. The trial court’s finding that there was a coercive environment was not clearly erroneous, given the quantity and weight of the testimony that supported it. The trial court, not the majority of this Court, was in the best position to judge the credibility of the witnesses and make findings of fact.

 The Michigan Court of Appeals has addressed what constitutes coercive conduct in a traditional knock-and-talk setting. In People v Bolduc, 263 Mich App 430, 441; 688 NW2d 316 (2004), the defendant testified that, after the police came to his home, he denied them permission to search his residence and requested that they leave the premises. The police ignored the defendant’s repeated requests to leave his home and instead continued to question him. Id. The Court of Appeals found that the police officers’ action constituted inherently coercive conduct. Id.
*277 This Court has not yet discussed the constitutionality of, or limits to, traditional knock-and-talk encounters. See People v Frohriep, 466 Mich 888 (2002) (Kelly, J., dissenting). In any event, the Bolduc decision indicates the willingness of the Court of Appeals to recognize that repeated refusals by police officers to leave a suspect’s home when requested constitute coercive conduct.

 430 F3d 274 (CA 6, 2005).

 The majority claims that the tether would provide more resolve to the person wearing it to remain inside. However, as noted above, defendant did initially display his resolve to remain in the apartment, and the officers refused to respect it. It is apparent from the fact of the tether that defendant had prior contact with the police and the court system. Presumably, the judge who ordered the tether encouraged him to cooperate with the police while on the tether. The majority’s opinion encourages both those who do and do not have an ongoing relationship with the court system to ignore police requests.