*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CASSAUNDRA AGLIATA,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2026
11:22 AM

No. 375925
Delta Circuit Court
LC No. 24-011262-FH

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

In this interlocutory appeal, defendant, who has been charged with operating a vehicle while intoxicated (OWI), third offense, MCL 257.625(9)(c), appeals on leave granted the trial court's order denying her motion to suppress chemical test results obtained under Michigan's informed consent law, MCL 257.625c. We affirm.

## I. FACTUAL BACKGROUND

On January 14, 2024, after pulling defendant over on suspicion of driving while intoxicated, a Michigan State Police trooper arrested defendant for OWI. The arresting trooper's body-worn camera captured footage of the entire interaction. Defendant cooperated with the trooper's request to submit to a preliminary breath test (PBT) after the trooper erroneously told defendant that she would receive an additional two-year misdemeanor charge if she refused. However, the trooper correctly advised defendant of her rights regarding the chemical test three times. Ultimately, defendant consented to the chemical test but noted that she did so "under duress." At the hospital, the trooper conflated the standards for PBTs and chemical tests, and he incorrectly told defendant that her refusal to submit to the chemical test would result in a two-year misdemeanor. Regardless, defendant did not revoke her consent. Instead, she rolled up her sleeve, presented her arm, and sat still for the blood draw.

## II. PROCEDURAL BACKGROUND

On August 12, 2024, a felony complaint was filed alleging OWI third offense. A preliminary exam was held on August 29, 2024 and October 2, 2024, after which defendant was

bound over to circuit court. On May 5, 2025, defendant moved to suppress the chemical test evidence, and she argued that the evidence was obtained in violation of her Fourth Amendment rights because the trooper's misstatement of the law coerced her consent. By stipulation, the trial court reviewed the footage of the body-worn camera before the May 13, 2025 hearing on defendant's motion. After reviewing the arresting officer's body-camera video, the trial court acknowledged that the trooper "initially gave a jumbled account of acts and penalties" but concluded that he "cured" these mistakes by reading the correct standard to defendant three times. Because the court determined that defendant had consented to the chemical test, the trial court denied her motion. This appeal followed.

On appeal, defendant argues that her consent to the chemical test was not valid because it was coerced by the trooper's misstatements of law regarding her right to refuse. We disagree.

## III. ANALYSIS

"We review de novo the circuit court's ultimate ruling on a motion to suppress evidence." *People v Stricklin*, 327 Mich App 592, 598; 935 NW2d 59 (2019) (quotation marks and citation omitted). Additionally, "[w]e review de novo whether the Fourth Amendment was violated and whether the exclusionary rule applies." *Id*. (quotation marks and citation omitted). However, the trial court's factual findings and decisions regarding the validity of consent are reviewed for clear error. *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001). A trial court's "finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Stricklin*, 327 Mich App at 598 (quotation marks and citation omitted). "We overstep our review function if we substitute our judgment for that of the trial court and make independent findings." *Id.* (quotation marks and citation omitted).

"Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures." *People v Armstrong*, 344 Mich App 286, 295; 1 NW3d 299 (2022); see US Const, Am IV; Const 1963, art 1, § 11. Searches and seizures must be reasonable for the results to be admissible in court. *Armstrong*, 344 Mich App at 295. Subject to certain exceptions, "[s]earches or seizures conducted without a warrant are per se unreasonable." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020). The only exception relevant to this case is consent, which "permits a search and seizure without a warrant when the consent is unequivocal, specific, and freely and intelligently given." *Stricklin*, 327 Mich App at 600. The prosecutor has the burden of proving that the totality of the circumstances establish that defendant's consent was freely and voluntarily given and "cannot satisfy this burden by simply showing the defendant's acquiescence to lawful authority." *Id*. at 599-600. "Consent is not voluntary if it is the result of coercion or duress." *People v Bolduc*, 263 Mich App 430, 440; 688 NW2d 316 (2004).

Under Michigan law, anyone who is arrested for OWI is considered to impliedly consent to chemical tests of their blood, breath, or urine. MCL 257.625c(1)(a). As relevant to this appeal, MCL 257.625a(6)(b) provides:

> (b) A person arrested for a crime described in section 625c(1) must be advised of all of the following:

(i) If he or she takes a chemical test of his or her blood, urine, or breath administered at the request of a peace officer, he or she has the right to demand that a person of his or her own choosing administer 1 of the chemical tests.

(ii) The results of the test are admissible in a judicial proceeding as provided under this act and will be considered with other admissible evidence in determining the defendant's innocence or guilt.

(iii) He or she is responsible for obtaining a chemical analysis of a test sample obtained at his or her own request.

(iv) If he or she refuses the request of a peace officer to take a test described in subparagraph (i), a test must not be given without a court order, but the peace officer may seek to obtain a court order.

(v) Refusing a peace officer's request to take a test described in subparagraph (i) will result in the suspension of his or her operator's or chauffeur's license and vehicle group designation or operating privilege and in the addition of 6 points to his or her driver record.

Here, defendant is correct that the trooper mistakenly told her that refusing to take the PBT would result in an additional charge. However, this appeal only concerns her consent to the chemical test, not the PBT, and the trooper correctly explained defendant's rights regarding the chemical test by reading verbatim from MCL 257.625a(6)(b). The trooper did briefly conflate the PBT and chemical test standards before the blood draw, but this mistake occurred after he correctly explained the law three times. More importantly, the trial court determined that this mistake occurred after defendant had already consented to the test and that she did not revoke that consent. Although defendant claims to have agreed to the test "under duress" because she felt as though she did not have a choice, we have previously stated that "[h]aving to make a choice between two undesirable options does not render defendant's express consent to the blood draw coerced and involuntary." *Stricklin*, 327 Mich App at 603. The trooper's body-camera footage clearly showed that defendant consented to the chemical test after the trooper explained her right to refuse three times. Having reviewed the video, we conclude that the trial court did not err by dismissing defendant's motion to suppress the chemical test.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick

-3-